IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Frank Furtick, Jr., | ) | Case No. 8:13-cv-00079-MGL-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden of Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 36.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on January 2, 2013.[1] [Doc. 1.] Additional attachments to the Petition were filed on February 25, 2013 and March 13, 2013. [Docs. 17, 21.] On June 7, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 35, 36.] On June 10, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 37.] On June 14, 2013, Petitioner filed a response in opposition to Respondent's motion and filed additional attachments on June

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on January 2, 2013. [Doc. 1-2 (envelope marked as received by prison mailroom on January 2, 2013).]

20, 2013. [Docs. 40. 44.] Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Richland County Clerk of Court. [Doc. 1 at 1.] In June and August 2006, Petitioner was indicted for one count of grand larceny, three counts of kidnapping, one count of assault and battery with intent to kill, three counts of armed robbery, two counts of assault and battery of a high and aggravated nature, and one count of murder. [Doc. 35-11.] On October 22, 2007, represented by Danielle Payne ("Payne") and Lauren Mobley ("Mobley"), Petitioner proceeded to a jury trial.[2] [App. 1–842.[3]] Petitioner was found guilty of one count of kidnapping, two counts of armed robbery, two counts of assault and battery of a high and aggravated nature, and one count of murder and not guilty of one count of kidnapping. [App. 820.] On October 25, 2007, Petitioner was sentenced to thirty years imprisonment on both armed robbery charges, ten years imprisonment on both assault and battery of a high and aggravated nature charges, and life without parole on the murder charge, all sentences to run concurrent.[4] [App. 840–41.] No direct appeal was filed.

---

[2]At trial, the State did not call the indictment for grand larceny or the indictment for assault and battery with intent to kill, which had been upgraded to murder. [App. 14–16.]

[3]The Appendix can be found at Docket Entry Numbers 35-1 through 35-2.

[4]Petitioner received no sentence on the kidnapping charge pursuant to S.C. Code Ann. § 16-3-910. [App. 840.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on July 7, 2008. [App. 843–48.] Petitioner raised the following ground for relief: "Counsel failed to file an appeal from conviction." [App. 844.] Petitioner also stated he would "amend at a later date 5 issues or less." [App. 845.] The State filed a return on March 4, 2009. [Doc. 35-4.]

A hearing was held on April 1, 2009, and Petitioner was represented at the hearing by Tara Dawn Shurling ("Shurling"). [App. 849–57.] At the hearing, Shurling moved to be relieved as counsel, which the Court granted, and the State consented to a belated direct appeal. [*Id.*] Charlie J. Johnson Jr. ("Johnson") was appointed to represent Petitioner on August 26, 2009. [*See* App. 860.] On April 26, 2010, the PCR court filed an order granting Petitioner a belated direct appeal pursuant to *White v. State*[5] and directing Petitioner's counsel to "secure the appropriate review of [Petitioner's] convictions" within thirty days. [*Id.* at 858–61.] Additionally, the PCR court ordered that Petitioner had waived his right to raise any other PCR allegations. [*Id.*] On May 19, 2010, Petitioner, represented by Mark Schnee, filed a motion to reconsider the order granting the belated direct appeal[6] [App. 862–64], which was denied on August 2, 2010 [App. 865].

---

[5]In *White v. State*, the South Carolina Supreme Court held that if the PCR court determines that the applicant never voluntarily and intelligently waived his right to appeal, on appeal of the PCR court's decision, the South Carolina Supreme Court will review the trial record as if a direct appeal had been timely perfected to determine if there was reversible error. 208 S.E.2d 35, 39–40 (S.C. 1974).

[6]In the motion to reconsider, Petitioner asserted he did not wish to waive his right to raise other PCR grounds after the belated direct appeal process was complete. [App. 862.]

Petitioner, represented by Wanda H. Carter ("Carter") of the South Carolina Commission on Indigent Defense, filed a petition for writ of certiorari in the South Carolina Supreme Court on June 20, 2011, raising the following issue:

> The PCR Court properly ruled that petitioner did not voluntarily and intelligently waive his right to a direct appeal in the case.

[Doc. 35-5 at 3.] Also on June 20, 2011, Carter filed a brief of appellant pursuant to *White v. State*, raising the following issues:

> I.
>
> The trial judge erred in denying counsel's motion to suppress appellant's statement given to police since it was obtained in violation of Edwards v. Arizona, 451 U.S. 477 (1981), because appellant gave several answers indicating that he desired counsel's presence during the custodial interrogation in question.
>
> II.
>
> The trial judge erred in failing to direct a verdict of acquittal on one of the state's armed robbery charges against him in the case because the beer can found at that particular crime scene did not qualify as a deadly weapon.

[Doc. 35-6 at 4.] The State filed a return to the petition for writ of certiorari on August 4, 2011 [Doc. 35-7], and a brief of respondent pursuant to *White v. State* on August 5, 2011 [Doc. 35-8].

On November 7, 2012, the South Carolina Supreme Court filed an opinion granting certiorari on the *White v. State* claim and, following its review of the direct appeal issues, affirmed Petitioner's convictions and sentences. [Doc. 35-9.] Remittitur was issued on November 27, 2012. [Doc. 35-10.]

4

**Petition for Writ of Habeas Corpus**

As stated, Petitioner filed this Petition for writ of habeas corpus on January 2, 2013 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner asserts the following grounds for relief, quoted substantially verbatim:

**Ground One**:    A beer can is not a deadly weapon.

*Supporting Facts:*    A can don't qualify as a deadly weapon.

2.  Trial judge having private communicating with deliberation jury by notes.  Not done in open court.

**Ground Two**:    Petitioner did not voluntarily intelligently waive his right to direct appeal.

*Supporting Facts*:    I have a right to appeal.  I told my appeal counsel she did not raise the issue.

**Ground Three**:    Trial judge erred in denying motion to move statement.

*Supporting Facts*:    I gave several an[s]wers indicating that I want counsel presence during inter[r]ogation.   Trial lawyer fail[ed] to interview[] witnesses from police report listed.  Trial lawyer fail[ed] to motion for victim[']s medical record.

**Ground Four**:    There [was] no evidence to support the murder charge.

*Supporting Facts*:    State failed to prove element of murder.  The pathologist say sa[id] she die[d] from cardiac arrest due to complications of beating.  And the pathologist also sa[id] she develop[ed] a blood clot in her leg that move[d] into her lungs and cause[d] cardiac arrest.  Trial lawyer told jury defendant was guilty.

[Doc. 1 at 5–10.]  As previously stated, additional attachments to the Petition were filed on February 25, 2013.  [Doc. 17.]  Construing the filing liberally, Petitioner raises the following grounds for relief in the additional attachments,[7] quoted substantially verbatim:

    (a)    Trial counsel was ineffective for not impeach[ing] conflict[ing] witness statement[s] at trial.

    (b)    Trial counsel ineffective for not fil[ing] notice of appeal as required by Rule 203 S.C.A.C.R.

    (c)    Trial counsel ineffective for saying that her client was not innocent during open argument and closing argument without the consent of the defendant.

    (d)    Trial judge violate[d] defendant right to be present at all stages of the proce[e]ding by having private communicating with deliberation jury by notes that was not done in open court.[8]

    (e)    Trial judge erred in fail[ing] to give a direct[ed] verdict of acquittal on murder charges.[9]

    (f)    A beer can does not constitute a deadly weapon.[10]

    (g)    The trial judge erred in denying counsel's motion to suppress appellant statement given to police since it was obtained in violation of McNeil v. Wisconsin.[11]

    (h)    Trial judge erred in denying counsel's motion to direct a verdict of acquittal on the armed robbery charges

---

[7] Because Petitioner failed to number his additional grounds, it is difficult to determine from his filing what constitutes a ground for relief and what constitutes argument in support of a ground for relief.  Stated differently, some grounds appear to be raised multiple times throughout Petitioner's additional filing; accordingly, the Court has attempted to liberally construe Petitioner's filing but states each ground raised in the additional filing only once in this recitation of the additional grounds.

[8] This claim was also raised in the Supporting Facts of Ground One of the Petition.

[9] This claim was also raised as Ground Four of the Petition.

[10] This claim was also raised as Ground One of the Petition.

[11] This claim was also raised in Ground Three of the Petition.

against him at the Pittstop Store on Farrow Road [regarding Nicolette Pittman's testimony].

(i)    The trial judge erred in denying counsel's motion to direct a verdict of acquittal on the armed robbery charges against him at the Pitt Store on Farrow Road [regarding Lashawn Hessell's testimony].

(j)    The trial judge erred in denying counsel's motion to direct a verdict of acquittal on the assault and battery and armed robbery of Barbara Marlow.

(k)    The trial judge erred in denying counsel's motion to direct a verdict of acquittal on the armed robbery and assault and battery of a high and aggravated nature on Barbara Marlow and Lisa Harrell . . . .

(l)    The kidnapping charge, I would argue that this cannot be submitted to the jury along with the armed robbery charge or the strong armed robbery charge . . . .

(m)    On July 7, Petitioner filed a PCR application with the Richland County Office of the Clerk of Court. A belated direct appeal hearing was not held on April 1, 2009. At the Richland County General Sessions Court. That was a motion hearing to have Tara Dawn Shurling removed as counsel because I filed a grievance against her with the office of disciplinary counsel. Judge Manning granted the motion on April 1, 2009. I was not represented at that hearing. It was a motion hearing to relieve[] Tara Dawn Shurling as counsel. I did not get one fair bite of the apple. Every defendant has a right to file a direct appeal and one PCR application. Brian T. Petrano, Assistant Attorney General, mislead the court when he sa[id] that the applicant has waived his right to raise any other PCR allegations at hearing. He also stated at the PCR hearing the respondent consented to a belated direct appeal because their interview of trial counsel indicated that applicant did request an appeal and due to a clerical error a notice of appeal was not properly filed. And at the PCR hearing the applicant expressed his satisfaction and was not concerned with presenting any amendment to his application. The Attorney General Brian T. Petrano he committ[ed] prejudice to bias the mind of the court.

[Docs. 17-2 through 17-8 (footnotes added).]  Additional attachments to the Petition were subsequently filed on March 13, 2013.  [Doc. 21.]  Construing the filing liberally, Petitioner raises the following ground for relief in these additional attachments, quoted substantially verbatim:

> Your honor my motion[s] are relevant to the init[i]al pleading that is filed in your court.  My trial attorney prior objection and prior motion are preserve[d] for the record.  Motion for a mistrial motion for a new trial motion to strike the jury panel.
>
> Trial motion that my Eighth Amendment was offend[ed].
>
> Trial motion that my Sixth Amendment was offend[ed].
>
> Trial attorney motion that life without parole statute is an ex post facto law it is applied retroactively and we believe that obviously it should only be applied.

[Doc. 21.]

Respondent filed a motion for summary judgment on June 7, 2013.  [Doc. 36.]  On June 14, 2013, Petitioner filed a response in opposition to Respondent's motion and filed additional attachments on June 20, 2013.  [Docs. 40, 44.]  Accordingly, Respondent's motion is now ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under

this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

9

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

11

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

12

applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653

13

S.E.2d 266 (S.C. 2007).[12]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[13]

---

[12]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[13]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies."  559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and
> efficiency of judicial decisions, but also the finality of those
> decisions, by forcing the defendant to litigate all of his claims
> together, as quickly after trial as the docket will allow, and

15

> while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

17

523 U.S. 614, 623 (1998).  To pass through this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends many of the grounds raised in the Petition and the additional attachments are procedurally barred.  [Doc. 35 at 27.]  The Court agrees some grounds are procedurally barred.

The following grounds are procedurally barred because they were not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari or brief of appellant pursuant to *White v. State* [*see* Docs. 35-5, 35-6]:

> **Ground One**, *Supporting Fact 2*: Trial judge having private communicating with deliberation jury by notes.  Not done in open court.
>
> **Ground Two**, *Supporting Fact 2*:  I told my appeal counsel she did not raise the issue.
>
> **Ground Three**, *Supporting Facts 2–3*:  Trial lawyer fail[ed] to interview[] witnesses from police report listed.  Trial lawyer fail[ed] to motion for victim[']s medical record.
>
> **Ground Four**:  There [was] no evidence to support the murder charge.  *Supporting Facts*:  State failed to prove element of murder.  The pathologist say sa[id] she die[d] from cardiac arrest due to complications of beating.  And the pathologist also sa[id] she develop[ed] a blood clot in her leg that move[d]

18

into her lungs and cause[d] cardiac arrest.  Trial lawyer told jury defendant was guilty.

(a)    Trial counsel was ineffective for not impeach[ing] conflict[ing] witness statement[s] at trial.

(c)    Trial counsel ineffective for saying that her client was not innocent during open argument and closing argument without the consent of the defendant.

(d)    Trial judge violate[d] defendant right to be present at all stages of the proce[e]ding by having private communicating with deliberation jury by notes that was not done in open court.

(e)    Trial judge erred in fail[ing] to give a direct[ed] verdict of acquittal on murder charges.

(h)    Trial judge erred in denying counsel's motion to direct a verdict of acquittal on the armed robbery charges against him at the Pittstop Store on Farrow Road [regarding Nicolette Pittman's testimony].

(i)    The trial judge erred in denying counsel's motion to direct a verdict of acquittal on the armed robbery charges against him at the Pitt Store on Farrow Road [regarding Lashawn Hessell's testimony].

(j)    The trial judge erred in denying counsel's motion to direct a verdict of acquittal on the assault and battery and armed robbery of Barbara Marlow.

(k)    The trial judge erred in denying counsel's motion to direct a verdict of acquittal on the armed robbery and assault and battery of a high and aggravated nature on Barbara Marlow and Lisa Harrell . . . .

(l)    The kidnapping charge, I would argue that this cannot be submitted to the jury along with the armed robbery charge or the strong armed robbery charge . . . .

(m)    On July 7, Petitioner filed a PCR application with the Richland County Office of the Clerk of Court.  A belated direct appeal hearing was not held on April 1, 2009.  At the Richland County General Sessions Court.  That was

a motion hearing to have Tara Dawn Shurling removed as counsel because I filed a grievance against her with the office of disciplinary counsel. Judge Manning granted the motion on April 1, 2009. I was not represented at that hearing. It was a motion hearing to relieve[] Tara Dawn Shurling as counsel. I did not get one fair bite of the apple. Every defendant has a right to file a direct appeal and one PCR application. Brian T. Petrano, Assistant Attorney General, mislead the court when he sa[id] that the applicant has waived his right to raise any other PCR allegations at hearing. He also stated at the PCR hearing the respondent consented to a belated direct appeal because their interview of trial counsel indicated that applicant did request an appeal and due to a clerical error a notice of appeal was not properly filed. And at the PCR hearing the applicant expressed his satisfaction and was not concerned with presenting any amendment to his application. The Attorney General Brian T. Petrano he committ[ed] prejudice to bias the mind of the court.

Your honor my motion are relevant to the init[i]al pleading that is filed in your court. My trial attorney prior objection and prior motion are preserve[d] for the record. Motion for a mistrial motion for a new trial motion to strike the jury panel.
Trial motion that my Eighth Amendment was offend[ed].
Trial motion that my Sixth Amendment was offend[ed].
Trial attorney motion that life without parole statute is an ex post facto law it is applied retroactively and we believe that obviously it should only be applied.

Because these grounds were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

20

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)). In this case, Petitioner has failed to even argue cause for the default of these grounds. [*See* Docs. 40, 44.] Petitioner also failed to argue a fundamental miscarriage of justice has occurred—i.e., that he is actually innocent. [*See* Docs. 40, 44.] Therefore, the above-listed grounds are barred from federal habeas review.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this

> Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Ground One, Supporting Fact One**

In Supporting Fact One under Ground One of the Petition, Petitioner contends a beer can does not qualify as a deadly weapon.[14]  [Doc. 1 at 5.]  The Court construes Petitioner's argument as alleging the trial judge erred in failing to direct a verdict of acquittal on one of the armed robbery charges because the beer can found at the crime scene did

---

[14]Petitioner also raises this argument in his additional attachments.  [Doc. 17-5 at 1–2.]

not qualify as a deadly weapon under the statute. [*See* Doc. 35-6 at 4 (brief of appellant pursuant to *White v. State*).]

Petitioner's claim goes to the sufficiency of the evidence. Such a claim is cognizable on collateral review; however, a federal court's review of such claims is "sharply limited." *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)); *see also Evans–Smith v. Taylor*, 19 F.3d 899, 905 (4th Cir. 1994) ("The standard is obviously rigorous."). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Wilson*, 155 F.3d at 405–406 (citing *Wright*, 505 U.S. at 292). When reviewing such a claim, a federal court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established, *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982), and when faced with all the evidence that allows conflicting inferences, this Court must presume that the jury resolved such conflicts in the State's favor, *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Therefore, Petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson*, 155 F.3d at 406 (quoting *Jackson*, 443 U.S. at 324)); *see also George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996); *Bradley v. State*, No. 04–1278, 2005 WL 3475770 at *6 (D.S.C. Apr. 5, 2005). Recently, in *Coleman v. Johnson*, — U.S. —, —, 132 S.Ct. 2060, 2062 (2012) (per curiam), the Supreme Court explained,

> We have made clear that *Jackson* claims face a high
> bar in federal habeas proceedings because they are subject to

23

> two layers of judicial deference.  First, on direct appeal, "it is
> the responsibility of the jury—not the court—to decide what
> conclusions should be drawn from evidence admitted at trial.
> A reviewing court may set aside the jury's verdict on the
> ground of insufficient evidence only if no rational trier of fact
> could have agreed with the jury."  *Cavazos v. Smith*, 565 U.S.
> 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).
> And second, on habeas review, "a federal court may not
> overturn a state court decision rejecting a sufficiency of the
> evidence challenge simply because the federal court disagrees
> with the state court.  The federal court instead may do so only
> if the state court decision was 'objectively unreasonable.'"  *Ibid.*
> (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855,
> 1862, 176 L.Ed.2d 678 (2010)).

A directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the charged offense.  *State v. McCluney*, 606 S.E.2d 485, 486 (S.C. 2004); *State v. McLauren*, 563 S.E.2d 346, 351 (S.C. 2002).  The trial court may not weigh the sufficiency of the evidence.  *McLauren*, 563 S.E.2d at 351.  In other words, if the prosecution has presented any evidence of the elements of the charged offense, the case will survive a motion for directed verdict.

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.16.  South Carolina has defined the crime of armed robbery as "[a] person who commits robbery while armed with a pistol, dirk, slingshot, metal knuckles, razor, or other deadly weapon, or while alleging, either by action or words, he was armed while using a representation of a deadly weapon or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon."  S.C. Code Ann. § 16-11-330(A).

In its opinion affirming Petitioner's convictions and sentence, the South Carolina Supreme Court stated the following:

> Petitioner's convictions and sentences are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: . . . Issue II: *State v. Weston*, 367 S.C. 279, 625 S.E.2d 641 (2006); *State v. Simmons*, 360 S.C. 33, 599 S.E.2d 448 (2004), *cert. denied*, 543 U.S. 1124 (2005); *State v. Bennett*, 328 S.C. 251, 493 S.E.2d 845 (1997); S.C. Code Ann. § 16-11-330(A) (2003).

[Doc. 35-9 at 2.]

Based upon a review of the evidence submitted at trial, the Court cannot find that Petitioner has shown that no rational trier of fact could have found him guilty.  The Court can also find no reversible error in the trial judge's refusal to grant a directed verdict on this claim based on this testimony and evidence, or in the state court's upholding this decision on appeal.  At trial, the prosecution's evidence was that the otherwise ordinary object, a beer can, along with Petitioner's hands, were used to inflict serious injury to the victim which caused later complications that ultimately resulted in the victim's death.  South Carolina courts, including those cases cited by the Supreme Court's opinion in this case, have held that ordinary objects may become deadly weapons when the facts indicate they have been used to inflict serious bodily harm or death.  *E.g., State v. Simmons*, 599 S.E.2d 448, 453 (S.C. 2004) (holding that "[w]hether an object has been used as a deadly weapon depends upon the facts and circumstances of each case" and that whether the robbery was perpetrated with a deadly weapon was a question of fact for the jury).

Based on a review of the evidence presented at trial, there was evidence presented from which the jury could have found plaintiff guilty.  Thus, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law.

Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this ground is without merit and summary judgment should be granted with respect to this issue.

**Ground Two, Supporting Fact One**

In Supporting Fact One under Ground Two of the Petition, Petitioner contends that he did not voluntarily and intelligently waive his right to direct appeal and that he had a right to an appeal.[15] [Doc. 1 at 6.] However, as previously stated, when Petitioner raised this issue in his PCR application, the State conceded that Petitioner was entitled to relief on this claim, and the PCR court found he was entitled to relief. Thereafter, Petitioner filed a brief of appellant pursuant to *White v. State*, and the Supreme Court granted certiorari and reviewed the two issues presented in his belated appeal. Accordingly, the state courts have already granted Petitioner the relief available to him on this ground and summary judgment should be granted with respect to this issue.

**Ground Three, Supporting Fact One**

In Supporting Fact One under Ground Three of the Petition, Petitioner contends the trial judge erred in denying Petitioner's motion to suppress his custodial statement because he gave several answers indicating that he wanted counsel present.[16] [Doc. 1 at 8.]

The Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, the United States Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently

---

[15]Petitioner also raises this argument in his additional attachments. [Doc. 17-2 at 1.]

[16]Petitioner also raises this argument in his additional attachments. [Doc. 17-6 at 1.]

coercive. 384 U.S. 436, 458 (1966). To ensure the Fifth Amendment privilege against self-incrimination is not undermined in custodial interrogations, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. *See id.* at 444. Specifically, *Miranda* requires that before any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. *See id.* "The Court's fundamental aim in designing the *Miranda* warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.'" *Colorado v. Spring*, 479 U.S. 564, 572 (1987) (quoting *Miranda*, 384 U.S. at 469). The Supreme Court has held that "*Miranda* announced a constitutional rule that Congress may not supersede legislatively." *Dickerson v. United States*, 530 U.S. 428, 444 (2000). Following the rule of stare decisis, the Supreme Court further declined to overrule the *Miranda* decision, which "has become embedded in the routine police practice to the point where the warnings have become part of our national culture." *Id.*

To ensure that law enforcement officials comply with *Miranda*'s requirements, the Supreme Court established an exclusionary rule, holding that statements obtained in violation of *Miranda* must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). The failure to administer *Miranda* warnings creates an irrebuttable presumption of compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. *Id.* at 306–07.

A suspect may waive his *Miranda* rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444; *see Spring*, 479 U.S. at 572; *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In such a case, the suspect's statements are not "compelled" within the meaning of the Fifth Amendment and may be introduced against him in the prosecution's case-in-chief without implicating constitutional concerns. *See Spring*, 479 U.S. at 573. The question of whether an accused has validly waived his *Miranda* rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *see Spring*, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation,'" including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)); *see North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

When determining whether a valid waiver has been made, the court need not inquire into the state of mind of the police, which is "irrelevant to the question of the intelligence and voluntariness of the suspect's election to abandon his rights." *Moran*, 475 U.S. at 423. The "Constitution does not require that a criminal suspect know and understand every

possible consequence of a waiver of the Fifth Amendment privilege," such as that he may be questioned and his statements used against him in a different criminal investigation. *Spring*, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Moran*, 475 U.S. at 422. As long as a suspect's voluntary decision to speak to law enforcement officials is made with full awareness and comprehension of all the information *Miranda* requires the police to convey—i.e., that the suspect has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation and that whatever the suspect chooses to say in response to police questioning may be used as evidence against him—the suspect's waiver is knowing and intelligent within the meaning of *Miranda*. *See Spring*, 479 U.S. at 574–75; *Moran*, 475 U.S. at 422–24.

On federal habeas corpus review of a petitioner's state conviction, the petitioner has the burden of proving that he did not competently and intelligently waive his constitutional rights. *Johnson*, 304 U.S. at 468–69 (involving waiver of right to assistance of counsel). Although the ultimate determination of a valid *Miranda* waiver is a mixed question of law and fact not subject to the presumption of correctness, *Boggs v. Bair*, 892 F.2d 1193, 1199 (4th Cir. 1989) (citing *Miller v. Fenton*, 474 U.S. 104 (1985)), the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e)(1). Moreover, in this federal habeas corpus proceeding, the state court's disposition of Petitioner's *Miranda* claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court

precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 402–03.

In its opinion affirming Petitioner's convictions and sentence, the South Carolina Supreme Court stated the following:

> Petitioner's convictions and sentences are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Issue I: *Davis v. United States*, 512 U.S. 452 (1994); *Edwards v. Arizona*, 451 U.S. 477 (1981); *State v. Wannamaker*, 346 S.C. 495, 552 S.E.2d 284 (2001) . . . .

[Doc. 35-9 at 2.]

The evidence in the record establishes that Petitioner signed a waiver of rights form, which included a recitation of *Miranda* warnings. [App. 96–99.] The trial court conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), and found the following:

> In an Edwards claim I must first determine whether the defendant invoked. Then we talk about the subsequent question. I don't see a clear invocation based on what Sergeant Faust has told me, and there's nothing to contradict that except the one line in the statement that says: "You indicated that you initially wanted an attorney." Which Sergeant Faust now says that he initially said, I don't know if I want an attorney. I don't know if I want to talk to an attorney.
>
> There's no evidence that the statement was made under anything other than normal circumstances. It was made within an hour or two of his arrival at the station. There's nothing beyond the – his presence there, he hadn't been there for a long time. He hadn't been – he is certainly in custody. He's certainly being interrogated. He's certainly entitled to his Miranda rights and warnings.

[App. 90–129.] Accordingly, the trial court found Petitioner had not clearly invoked his right to counsel. Because the Supreme Court's decision affirming the convictions and

sentences is supported by the record and the relevant caselaw,[17] Petitioner is unable to establish that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.   Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Accordingly, this ground is without merit and summary judgment should be granted with respect to this issue.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 21, 2014
Greenville, South Carolina

---

[17]The opinion cites to *Davis v. United States*, 512 U.S. 452 (1994), where the United States Supreme Court held that if a suspect makes a reference to an attorney that is ambiguous or equivocal, cessation of questioning is not required but, instead, the suspect must unambiguously request counsel, and *Edwards v. Arizona*, 451 U.S. 477 (1981), where the Supreme Court held that a determination of whether a suspect waived his right to counsel depends upon particular facts and circumstances surrounding that case, including background, experience and conduct of the accused.